FILED
SUPERIOR COURT
OF GUAM

2018 MAR -1 AM II: 35

CLERK OF COURT

BY:____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DEPARTMENT OF PUBLIC WORKS,<br><br>Petitioner,<br><br>v.<br><br>THE GUAM CIVIL SERVICE COMMISSION,<br><br>Respondent,<br><br>L.A.P.,<br><br>Real Party in Interest. | SPECIAL PROCEEDINGS<br>CASE NO. SP 0150-15<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on November 22, 2017, for a bench trial upon Petitioner's Amended Petition for Writ of Judicial Review, submitted under seal on September 13, 2016. Assistant Attorney General Marianne Woloschuk represented the Petitioner, Department of Public Works; Attorney William L. Gavras represented Real Party in Interest, L.A.P.; and Attorney John G. Nowakowki represented the Respondent, Guam Civil Service Commission[1]. Upon a review of the pleadings, the applicable statutes and case law, and the oral arguments presented in this matter, the Court now issues these Findings of Fact and Conclusions of Law.

---

[1] Attorney for Respondent filed a Motion to Withdraw as Administrative Counsel for the Guam Civil Service Commission on November 30, 2017. On February 9, 2018, Attorney Frederick J. Horecky was substituted as counsel of record, on an interim basis, for the Guam Civil Service Commission in the above-captioned matter.



## FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following findings of fact:

1. The Petitioner is the Department of Public Works (DPW), an agency of the Government of Guam.

2. The Respondent is the Guam Civil Service Commission (CSC), an administrative tribunal constituted by Title 4, Chapter 4 of the Guam Code, created to regulate and administer an appeals system for classified employees of the Government of Guam.

3. Real Party in Interest, L.A.P., is a classified employee at the Department of Public Works (DPW) employed as an Engineer Supervisor in the Engineering Department and Capital Improvement Projects Division.

4. On February 15, 2008, a local grand jury returned an indictment in *People v. [L.A.P.] et al.*, Superior Court of Guam Criminal Case No. CF0088-08 (local criminal case), charging L.A.P. with 1) Tampering with Records (as a Third Degree Felony), 2) Theft by Deception (as a Third Degree Felony), and 3) Official Misconduct (as a Misdemeanor) for alleged improprieties involving the misuse of federal highway funds to pay overtime to DPW employees.

5. On March 11, 2008, DPW served L.A.P. with a Notice of Proposed Adverse Action, charging L.A.P. with "other misconduct not specifically listed" in relation to the criminal indictment against her in Case No. CF0088-08 and a newspaper article reporting the matter.

6. On April 3, 2008, DPW served L.A.P. with a Final Notice of Proposed Adverse Action (2008 Adverse Action), terminating her employment with DPW, effective April 4, 2008.

7. L.A.P. timely appealed the 2008 Adverse Action to the CSC in *In the Matter of [L.A.P.] v. Dep't of Pub. Works*, Adverse Action Appeal Case No. 0804-AA14.

8. On May 12, 2008, the People moved to dismiss the indictment in Case No. CF0088-08 without prejudice.

9. On May 22, 2008, the Superior Court of Guam granted the People's motion to dismiss without prejudice, and ordered Case No. CF0088-08 expunged. The order granting

dismissal without prejudice was issued on July 1, 2008, and entered on the docket on July 8, 2008.

10. Between December 4, 2008, and December 9, 2008, DPW and L.A.P. signed a Settlement Agreement, which was filed with the CSC on December 10, 2008.

11. The Settlement Agreement, drafted by L.A.P.'s Guam Federation of Teachers (GFT) Representative, stated in relevant part:

    a. "The Employee commenced an appeal of Adverse Action taken against her by Management in the Civil Service Commission on or about April 18, 2008 bearing Adverse Action Appeal Case No. No. [*sic*] 0804-AA14 of her Dismissal from her classified employment in the DPW effective April 4, 2008."

    b. "The parties desire to enter into this settlement Agreement (hereinafter "Agreement") for the referenced matters in order to provide for certain arrangements in full settlement and discharge of the Appeal upon the terms and conditions set forth herein."

    c. "Purpose of Agreement. Employee and Management acknowledge and agree that this Agreement is a Settlement and Compromise of the referenced matters. It is the intention of the parties by the execution of this Agreement to fully, finally and completely resolve all disputes between them regarding these matters . . . ."

Pet'r Opening Br., Ex. I 32-37.

12. On December 11, 2008, the CSC issued a Judgment of Dismissal in Adverse Action Appeal Case No. 0804-AA14 based on the Settlement Agreement, and L.A.P. was reinstated to her former position as Engineer Supervisor at DPW.

13. On February 29, 2012, a federal grand jury returned an indictment in *United States v. [L.A.P.]*, District Court of Guam Criminal Case No. CR12-00014, charging L.A.P. with 1) Conspiracy to Commit Fraud Concerning a Program Receiving Federal Funds, 2) Fraud Concerning a Program Receiving Federal Funds, 3) Conspiracy to Commit Wire Fraud, and 4) Wire Fraud, for alleged improprieties involving the misuse of federal highway funds to pay overtime to DPW employees.

14. On August 12, 2014, L.A.P. entered into a plea agreement and pled guilty to Misprision of Felony in Criminal Case No. CR12-00014 before a U.S. Magistrate Judge.

15. On August 13, 2014, L.A.P. gave a copy of her plea agreement in the federal criminal case to her DPW Supervisor and informed him of her guilty plea. The DPW Supervisor reported the matter to the DPW Director.

16. On August 27, 2014, based on the report and recommendation of the U.S. Magistrate Judge, the District Court Judge accepted L.A.P.'s guilty plea.

17. On February 20, 2015, the District Court announced its judgment and sentenced L.A.P. in Criminal Case No. CR12-00014. The written Judgment was issued on February 25, 2015, and entered on the docket on February 26, 2015.

18. On February 23, 2015, counsel for one of L.A.P.'s co-defendants served a letter to the DPW Director, informing him that L.A.P. and her co-defendant had been sentenced for their federal conviction of Misprision of Felony.

19. On October 3, 2014, DPW served L.A.P. with a Notice of Proposed Adverse Action, charging L.A.P. for "conviction of a crime" in relation to her federal conviction in Criminal Case No. CR12-00014 and "other misconduct not specifically listed" relating to her failure to report the conviction pursuant to 4 GCA §§ 4202.1 and 4202.2.

20. On October 24, 2014, DPW served L.A.P. with a Final Notice of Proposed Adverse Action (2014 Adverse Action), terminating her employment with DPW for cause pursuant to 4 GCA § 4406, effective October 27, 2014.

21. On November 13, 2014, L.A.P. appealed the 2014 Adverse Action to the CSC in *In the Matter of [L.A.P] v. Dep't of Pub. Works*, Adverse Action Appeal Case No. 14-AA27T, arguing that the charges against her violated the Settlement Agreement of the 2008 Adverse Action because both adverse actions concerned the same misconduct underlying the Settlement Agreement. In addition, L.A.P. denied violating 4 GCA §§ 4202.1 and 4202.2, arguing that she had not yet been convicted since no judgment had been entered in the federal criminal case, and because she had already notified her supervisor by providing him a copy of her plea agreement.

22. On February 24, 2015, L.A.P. moved before the CSC to dismiss the 2014 Adverse Action based on the grounds she asserted in Adverse Action Appeal Case No. 14-AA27T.

23. On March 3, 2015, DPW opposed the Motion to Dismiss. On March 26, 2015, the CSC held a hearing on the motion and requested additional briefing from the parties regarding the issue of when an employee is considered "convicted" for the purposes of 4 GCA §§ 4202.1 and 4202.2. The parties submitted their supplemental briefs on April 14, 2015.

24. On April 23, 2015, the CSC held a hearing and issued its decision in favor of L.A.P. by a unanimous vote, seven (7) to zero (0).

25. On September 17, 2015, the CSC issued a Decision and Judgment, granting L.A.P.'s Motion to Dismiss the 2014 Adverse Action. In its written decision, the CSC found that the Settlement Agreement contained broad language, such as to "fully finally and completely resolve all disputes [between the parties] . . ." and that the Settlement Agreement served as a "full and complete compromise of matters involving disputed issues." The CSC read and understood this Settlement Agreement to include boilerplate language used in "global" settlement agreements "where all matters are put to rest." Thus, the CSC concluded that the Settlement Agreement intended to encompass subsequent convictions resulting from the same misconduct underlying the 2008 Adverse Action, and thus found that the 2014 Adverse Action against L.A.P. for a conviction of a crime was clearly barred. In addition, the CSC held that since the charges for failing to report the federal conviction pursuant to 4 GCA §§ 4202.1 and 4202.2 arose from the same misconduct covered by the Settlement Agreement, those charges were also barred. Alternatively, the CSC held that if the Settlement Agreement did not cover those notice charges, L.A.P. fulfilled her statutory obligations with the February 23, 2015 letter, as well as with prior notice to her DPW Supervisor on August 13, 2014, which the CSC found was sufficient to create actual notice in substantial compliance with the statutory requirements.

26. The CSC reinstated L.A.P. to her former position as Engineer Supervisor at DPW, and awarded her back pay and attorney's fees and costs.

27. On September 16, 2016, DPW filed under seal an Amended Petition for Writ of Judicial Review of the CSC's Decision and Judgment of the 2014 Adverse Action, arguing that that the CSC's ruling was erroneous, contrary to law, and not supported by substantial evidence. L.A.P. filed her answer to DPW's Amended Petition for Writ of Judicial Review on December 21, 2016.

28. DPW filed under seal its Opening Brief on April 4, 2017, the CSC filed their Opposition Brief on May 3, 2017, and L.A.P. filed her Opposition Brief on May 4, 2017. DPW filed their Reply Brief on May 18, 2017.

29. On November 22, 2017, a bench trial was held on DPW's Amended Petition for Writ of Judicial Review. The Court heard oral arguments and the parties submitted on their briefs.

## CONCLUSIONS OF LAW

The Court now issues the following conclusions of law on the matters:

1. The Guam Civil Service Commission (CSC) has jurisdiction over this matter pursuant to 4 GCA § 4406.

2. The Court has jurisdiction over this matter pursuant to 4 GCA § 4406 and 7 GCA § 3105.

3. Title 4, Chapter 4, Section 4406 of the Guam Code provides, in relevant part: "The decision of the Commission or appropriate entity shall be final, but subject to judicial review." 4 GCA § 4406.

4. Judicial review of a CSC Decision and Judgment is governed by 5 GCA § 9240, which provides:

> Judicial review may be had of any agency decision by any party affected adversely by it. If the agency decision is not in accordance with law or not supported by substantial evidence, the court shall order the agency to take action according to law or the evidence.

5 GCA § 9240.

5. In reviewing a petition for judicial review, the Court will not disturb an agency's factual findings if supported by substantial evidence and in accordance with Guam law. See 5 GCA § 9240; Guam Mem'l Hosp. v. Civil Serv. Comm'n, 2015 Guam 18 ¶ 15.

6. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Guam Mem'l Hosp. v. Civil Serv. Comm'n, 2015 Guam 18 ¶ 15.

7. Such standard is extremely deferential and the reviewing court should uphold an agency's findings unless "the evidence presented would compel a reasonable factfinder to reach a contrary result." Id. at ¶ 16.

8. Whether the CSC's decision was conducted in accordance with the law is reviewed *de novo*. Guam Waterworks Auth. v. Civil Serv. Comm'n, 2014 Guam 35 ¶ 8.

The Settlement Agreement

9. General contract principles apply to the interpretation of settlement agreements. Blas v. Cruz, 2009 Guam 12 ¶ 11; Leon Guerrero v. Moylan, 2000 Guam 8 ¶ 8.

10. In the interpretation of contracts, effect must be given to the mutual intention of the parties as it existed at the time of contracting. See 18 GCA § 87102.

11. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. See 18 GCA § 87105.

12. In interpreting a provision of a contract to determine the intent of the contracting parties, the express language of the contract should control and its words should be given their ordinary meaning. Camacho v. Camacho, 1997 Guam 5 ¶ 32.

13. It was not disputed by the parties, either in their briefs or during oral argument, that the Settlement Agreement reached in Adverse Action Appeal Case No. 0804-AA14, reflected the agreement between DPW and L.A.P to resolve the 2008 Adverse Action. When examining the Settlement Agreement, it is clear that the mutual intent of the parties was to resolve and dismiss the 2008 Adverse Action and related Adverse Action Appeal Case No. 0804-AA14. At issue, however, is whether the Settlement Agreement,

by its express language, prohibited further adverse action by DPW, namely the 2014 Adverse Action.

14. As a threshold matter, courts are required to look "to the four corners of the contract and determine whether, as a matter of law, any ambiguity exists." Ramiro v. White, 2016 Guam 6 ¶ 23 (citing Wasson v. Berg, 2007 Guam 16 ¶¶ 11, 17).

15. When a contract or its terms are open to more than one interpretation, it is ambiguous. Bank of Guam v. Flores, 2004 Guam 5 ¶ 14.

16. Courts will consider extrinsic evidence only if there is ambiguity in the contract. Guerrero v. Guerrero, 2014 Guam 6 ¶ 16. Otherwise, extrinsic evidence is inadmissible to interpret, vary, or add to the terms of an unambiguous written agreement. Id. (citing Wasson v. Berg, 2007 Guam 16 ¶ 11).

17. Looking solely to the language of the Settlement Agreement, the Court finds no ambiguity. In addition, DPW, L.A.P., and the CSC each assert that the Settlement Agreement is unambiguous. Thus, as a threshold determination, the Court finds that the Settlement Agreement is clear and unambiguous, and extrinsic evidence is not admissible to interpret the terms of the agreement.

18. When interpreting the parties' Settlement Agreement, the agreement must be taken together and viewed as a whole, with each provision interpreted in light of each other, so as to give effect to every part, if reasonably practicable. Gov't of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc., 2004 Guam 17 ¶ 73; See 8 GCA § 87107.

19. The introductory provision of the Settlement Agreement provides in part: "The parties desire to enter into this settlement Agreement . . . for the *referenced matters* in order to provide for certain arrangements in full settlement and discharge *of the Appeal . . .*" (emphasis added). Looking to the Settlement Agreement as a whole and interpreting the above provision in light of each provision contained therein, the Court finds that the terms "referenced matters" in full settlement and discharge "of the Appeal" intended to refer only to the 2008 Adverse Action and the related Adverse Action Appeal Case No. 0804-AA14. This determination is further supported by the preceding provision which

specifies the appeal at issue stating: "The Employee commenced an appeal of Adverse Action taken by her . . . bearing *Adverse Action Appeal Case No. [sic] 0804-AA14* of her Dismissal from her classified employment in the DPW effective April 4, 2008" (emphasis added). Thus, by its terms, the sole referenced matter in the Settlement Agreement is the 2008 Adverse Action and the related Adverse Action Appeal Case No. 0804-AA14.

20. The "Purpose of Agreement" provision of the Settlement Agreement also provides: "Employee and Management acknowledge and agree that this Agreement is a Settlement of the *referenced matters*" (emphasis added). Again, the Court finds that the referenced matters contained in the Settlement Agreement are the 2008 Adverse Action and the related Adverse Action Appeal Case No. 0804-AA14. The provision states in the subsequent sentence: "It is the intention of the parties . . . to fully, finally and completely resolve all disputes between them *regarding these matters. . .*" (emphasis added). Looking once again to the Settlement Agreement as a whole and interpreting the above provision in light of each provision contained therein, the Court finds that the term "matters" intended to refer to the full, final, and complete resolution of all disputes stemming from the 2008 Adverse Action and the related Adverse Action Appeal Case No. 0804-AA14.

21. It is clear, by its terms, that the Settlement Agreement addressed only the Adverse Action Appeal Case No. 0804-AA14. That appeal resulted from the 2008 Adverse Action charging L.A.P. with "other misconduct not specifically listed" in relation to the criminal indictment against her in Criminal Case No. CF0088-08 for alleged improprieties involving the misuse of federal highway funds to pay overtime to DPW employees. Therefore, the Court finds that the Settlement Agreement intended to solely cover and resolve the appeal of the 2008 Adverse Action resulting from L.A.P.'s criminal indictment in the Superior Court.

22. It is also clear, by its terms, that the Settlement Agreement did not encompass Adverse Action Appeal Case No. 14-AA27T filed in 2014. That appeal resulted from the 2014

Adverse Action charging L.A.P. for the "conviction of a crime" in relation to her federal conviction of Misprision of Felony in Criminal Case No. CR12-00014 and "other misconduct not specifically listed" relating to her failure to report the conviction pursuant to 4 GCA §§ 4202.1 and 4202.2. The 2014 Adverse Action is not based on the same misconduct underlying the appeal of the 2008 Adverse Action. The 2008 Adverse Action is based on L.A.P.'s criminal indictment in the Superior Court, while the 2014 Adverse Action is based on L.A.P.'s federal conviction. The misconduct underlying both adverse actions is significantly dissimilar. The elements of the offense of Misprision of Felony do not require the facts needed to support any of the charges set forth in L.A.P.'s 2008 criminal indictment. Further, the misconduct in the 2014 Adverse Action also related to L.A.P.'s failure to timely notify DPW of her conviction, which was not a basis for the 2008 Adverse Action. Thus, because the 2014 Adverse Action arises out of substantially different circumstances than the bases prompting the 2008 Adverse Action, the Court finds that the Settlement Agreement resolving the 2008 Adverse Action Appeal does not bar the 2014 Adverse Action and related Adverse Action Appeal Case No. 14-AA27T.

23. The Court finds that the CSC misinterpreted the terms of the Settlement Agreement and therefore, finds the CSC's decision was not supported by substantial evidence. Accordingly, the CSC erred when it concluded that the Settlement Agreement barred the 2014 Adverse Action and related Adverse Action Appeal Case No. 14-AA27T.

<u>The Release Provision</u>

24. A release is the "abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced . . . and its effect is to extinguish the cause of action." <u>Marder v. Lopez</u>, 450 F.3d 445, 449 (9th Cir. 2006) (citations omitted).

25. A release agreement is governed by general principles of contract law, and courts must interpret a release so as to give effect to the parties' mutual intent as it existed at the time the agreement was executed. <u>Marder</u>, 450 F.3d at 449.

26. Typically, contractual release terms do not apply to future causes of action unless expressly contracted for by the parties. Campos v. Town of Pahrump, 274 F.Supp.3d 1106, 1112 (2017).

27. The Settlement Agreement contained a "release" provision stating that L.A.P. would receive "$1,000 for a *one-time, non-recurring* release." A mirror provision also provided that Management shall pay L.A.P. "$1,000 for a *one-time, non-recurring* release." It is clear, by its terms, that the release applied only to the "referenced matters" contained in the Settlement Agreement, namely, the 2008 Adverse Action and the related Adverse Action Appeal Case No. 0804-AA14. The Court finds that the terms "one-time" and "non-recurring" intended to limit the scope of the release to the matters arising solely from the 2008 Adverse Action and appeal. Looking to the Settlement Agreement as a whole and interpreting the release provision in light of each provision contained therein, the Court finds that the language of the release provision indicates that it applies exclusively to the full settlement and release of the claims pertaining to the 2008 Adverse Action and Adverse Action Appeal Case No. 0804-AA14. Thus, because the release provision only applies to the matters concerning the 2008 Adverse Action, the Settlement Agreement does not bar or release claims arising from the 2014 Adverse Action and the related Adverse Action Appeal Case No. 14-AA27T.

28. Further, because the Settlement Agreement only applies as a "one-time" and "non-recurring" settlement and release of the 2008 Adverse Action and appeal, the Court finds that the Settlement Agreement is not a "global" settlement resolving any and all claims against L.A.P. and therefore, does not subsequently bar any and all future adverse actions, including the 2014 Adverse Action.

29. Again, the Court finds that the CSC misinterpreted the terms of the Settlement Agreement and therefore, finds the CSC's decision was not supported by substantial evidence. Accordingly, the CSC erred when it concluded that the Settlement Agreement entered into by DPW and L.A.P. was a "global" settlement agreement disposing of all

subsequent claims against L.A.P. and barring the 2014 Adverse Action and related Adverse Action Appeal Case No. 14-AA27T.

Notice Requirement

30. Title 4, Chapter 4, Section 4406 of the Guam Code governs Adverse Action procedures and provides in relevant part:

> An employee in the classified service who is dismissed, demoted or suspended shall be given immediate notice of the action, together with a specific statement of the charges upon which such action is based . . . In no event may an employee in the classified service be given notice and statement of the charges required by this Section after the sixtieth (60th) day after management knew or should have known the facts or events which form the alleged basis for such action. Any action brought by management in violation of this Section is barred and any decision based upon such action is void.

4 GCA § 4406.

31. Title 4, Chapter 4, Section 4202.1 of the Guam Code governs an employee's duty to report criminal charges or a conviction, and provides:

> An employee in the classified service who is charged by indictment, information or magistrate's complaint with any crime in any court or who is *convicted of a crime* in any court except Traffic Court shall provide the head of the department or agency employing the employee with written notice of the charges or the conviction within seventy-two (72) hours thereof.

4 GCA § 4202.1 (emphasis added).

32. Title 4, Chapter 4, Section 4202.2 of the Guam Code governs an employee's failure to report criminal charges or conviction and provides:

> (a) Failure to provide the notice required by Title 4 GCA § 4202.1 is grounds for a separate Adverse Action.
> (b) The sixty (60) day limitation imposed by Title 4 GCA § 4406 commences when the employee gives notice of the charges or *conviction of a crime* to the head of the department or agency as required by Title 4 GCA § 4202.1.

4 GCA 4202.2 (emphasis added).

33. Real Party in Interest, L.A.P., is a classified employee at the Department of Public Works (DPW) employed as an Engineer Supervisor in the Engineering Department and Capital Improvement Projects Division. Therefore, the 60 day notice requirement pursuant to 4 GCA § 4406 and the duty to report pursuant to 4 GCA §§ 4202.1 and 4202.2 are applicable. Under the statutes, L.A.P. was required to notify DPW management within seventy-two (72) hours of her federal conviction, and DPW had sixty (60) days upon learning of the federal conviction to initiate and notify L.A.P. of an adverse action against her.

34. The word "conviction" can mean either the finding of guilt or the entry of a final judgment on that finding. People v. Ongiil, 2016 Guam 34 ¶ 20 (quoting Deal v. United States, 508 U.S. 129, 131 (1993); see also Black's Law Dictionary (10th ed. 2014) (defining "conviction" as: 1) "[t]he act or process of judicially finding someone guilty of a crime; the state of having being proved guilty"; and 2) [t]he judgment (as by a jury verdict) that a person is guilty of a crime").

35. In contrast, the term "judgment of conviction" includes both the adjudication of guilt and the sentence. See People v. Camacho, 2009 Guam 6 ¶ 19 (citing Deal, 508 U.S. at 131). Nowhere in the entire statutory scheme of Title, 4 Chapter 4 of the Guam Code, does the term "judgment of conviction" appear.

36. When interpreting a word in a statute, the meaning of the word "must be drawn from the context in which it is used." Deal, 508 U.S. at 132.

37. In determining the plain meaning of a statutory provision, courts will look to the entire statutory scheme containing the provision for guidance. Amerault v. Intelcom Support Servs., Inc., 2004 Guam 23 ¶ 16; see also Sumitomo Constr. Co. v. Gov't of Guam, 2001 Guam 23 ¶ 17 ("[i]n determining legislative intent, a statute should be read as a whole and in conjunction with other sections.").

38. Looking to Title 4, Chapter 4 of the Guam Code, the Court finds that the meaning of the term "conviction" used in the context of 4 GCA §§ 4202.1 and 4202.2 was intended to

mean "the finding of guilt" that precedes a judgment of conviction. In other words, a person is "convicted" when the judge or a jury finds that person guilty.

39. The Guam Legislature enacted Public Law 28-122 to add Sections 4202.1 and 4202.2 to Title 4, Chapter 4 of the Guam Code, the purpose of which was "to require government employees who are charged with or convicted of a crime to *provide prompt notice of the charges or conviction* to the head of the employee's department or agency and to provide sanctions for failure to provide notice." P.L. 28-122, 28th Leg. (2006) (emphasis added). In enacting Public Law 28-122, the Legislature intended to remedy undiscovered employee misconduct that has disturbed overall government operations and prevented management from initiating timely disciplinary action. Id. Accordingly, interpreting the word "conviction" to mean the "finding of guilt" aligns with the legislative intent to provide prompt notice of an employee's conviction to management.

40. It is widely accepted that a magistrate judge may conduct a guilty plea colloquy for the purpose of making a report and recommendation to a district court judge. See United States v. Reyna-Tapia, 328 F.3d 1114, 1119-22 (9th Cir. 2003) (en banc). However, a guilty plea given to a magistrate judge is not binding until accepted by the district court. Id. Thus, a defendant is not convicted until the district court accepts the defendant's guilty plea. Id.; see also United States v. Alvarez-Tautimez, 160 F.3d 573, 576-77 (9th Cir. 1998) ("the court's acceptance of the plea is a necessary prerequisite to its enforcement . . . and is a given that a defendant is not bound by a guilty plea until it is accepted by the court.").

41. On August 12, 2014, L.A.P. entered into a plea agreement and pled guilty to Misprision of Felony in Criminal Case No. CR12-00014 before a U.S. Magistrate Judge. Thereafter, on August 27, 2014, based on the report and recommendation of the magistrate judge, the District Court Judge accepted L.A.P.'s guilty plea. Thus, because L.A.P.'s guilty plea became binding on her when it was accepted by the district court, the Court finds that L.A.P. was "convicted" for the purposes of 4 GCA §§ 4202.1 and 4202.2 on August 27, 2014, when the District Court Judge accepted her guilty plea.

42. Under the statutes L.A.P. had seventy-two (72) hours to notify management of her federal conviction or face potential adverse action. See 4 GCA §§ 4202.1 and 4202.2. As previously determined, L.A.P. was convicted on August 27, 2014, when the district court accepted her guilty plea. Because the last day to notify management was August 30, 2014, a Saturday, L.A.P. had until September 1, 2014, to notify DPW management of her conviction. See 1 GCA § 1002 (Saturday's are holidays for purposes of transacting public business); see also 1 GCA § 1004 ("[w]henever any act of a secular nature, other than a work of necessity or mercy, is appointed by law or contract upon a particular day which falls on a holiday, such act may be performed upon the next business day with the same effect as if it had been performed upon the day appointed."). Accordingly, the Court finds that the CSC erred when they concluded that the February 23, 2015, letter sent by L.A.P.'s co-defendant's counsel, informing DPW of the subsequent judgment and sentence, fulfilled the requirements mandated by 4 GCA §§ 4202.1 and 4202.2.

43. The Court also finds that the written copy of the plea agreement given to DPW management on August 13, 2014, by L.A.P. the day after she plead guilty before the U.S. Magistrate Judge, did not satisfy the statutory requirements. 4 GCA § 4202.1 mandates that an employee "*shall provide* the head of the department or agency with written notice of the charges or the conviction within seventy-two (72) hours thereof" (emphasis added). Again, the Court determined that L.A.P. was convicted on August 27, 2014, when the district court accepted her guilty plea. Accordingly, the plea agreement given to DPW management on August 13, 2014, did not satisfy the statutory requirement. Thus, the Court finds that the CSC erred when they concluded that the plea agreement given to DPW management on August 13, 2014, fulfilled the requirements mandated by 4 GCA §§ 4202.1 and 4202.2.

44. The Court finds that L.A.P. failed to comply with the statutory requirements and therefore, finds that the CSC's decision was not supported by substantial evidence. Thus,

the CSC erred when it concluded that L.A.P. fulfilled the requirements mandated by 4 GCA §§ 4202.1 and 4202.2.

## CONCLUSION

Based on the above Findings of Fact and Conclusions of Law, the Court GRANTS the Petition and hereby VACATES the Decision and Judgment issued by the Guam Civil Service Commission in Adverse Action Appeal Case No. 14-AA27 and REMANDS the matter to the Guam Civil Service Commission for further proceedings not inconsistent with this ruling.

**IT IS SO ORDERED** this day of ____ MAR 0 1 2018 ____ .



HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam

**SERVICE** VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of:
OFFICE of the AG-CIVIL
CIVIL SERVICE COMMISSION
Date: 3-1-18  Time: 1:33 PM
A. Suyos
Deputy Clerk, Superior Court of Guam

**SERVICE** VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of:
F. HORECKY + Associates
WILLIAM L. GAVRAS
Date: 3-1-18  Time: 1:33 PM
A. Suyos
Deputy Clerk, Superior Court of Guam

## ORIGINAL